IN THE OREGON TAX COURT
MAGISTRATE DIVISION

Chester R. YOUNGBLOOD
and Barbara R. Youngblood,
*Plaintiffs,*

*v.*

MALHEUR COUNTY ASSESSOR,
*Defendant.*

(TC-MD 001144B)

Chester Youngblood, Plaintiff, argued the cause *pro se.*

Richard Thurmond, Chief Appraiser, Malheur County Assessor's Office, argued the cause for Defendant.

Decision for Defendant rendered June 29, 2001.

Decision on *de novo* review at 16 OTR 23 (2002).

**JEFF MATTSON, Magistrate.**

Plaintiffs appeal the disqualification from farm use special assessment of a portion of their property currently used as a hunting preserve.

Trial was held by telephone April 3, 2001. Chester Youngblood participated for Plaintiffs. Richard Thurmond, Chief Appraiser, participated for Defendant.

STATEMENT OF FACTS

Plaintiffs own nearly 80 acres of real property in eastern Oregon. It is identified as Account No. 174700C-1400-15. For the past five years, Plaintiffs have raised pheasant and other fowl and are now producing in upwards of 5,000 birds each year. The birds are held in 50' x 150' flight pens. For the past four years, Plaintiffs have released the birds between August 1 and March 31 onto a hunting preserve portion of Plaintiffs' land that covers approximately 72 acres.

Forty percent of Plaintiffs' farm income this past year was from the sale of birds. Plaintiffs sell 12-week old chicks for $4.50 each and grown birds at prices ranging from $8.50 to $10.00, purchased directly from the pens. As to the hunting preserve, Plaintiffs also charge on a per bird basis, ranging from $8 for hens to $14 for roosters, whether shot and captured or only injured.

For the 2000-2001 tax year, Defendant disqualified the 72-acre hunting preserve from farm use special assessment. That portion of land used for raising the birds, as well as an area where pigs are raised, remains in special assessment. Defendant argues that a hunting preserve is a commercial activity that does not qualify as bona fide farm use.

Plaintiffs offered as evidence a listing of other hunting preserves that are granted farm use assessment. Noting that Plaintiffs' property has not been farmed for several

years, Defendant testified that those preserves on the list (within Malheur County) are more intensely farmed and that the hunting activity is a secondary use of the same land, so that the "real" farming activity qualifies those properties for the special assessment. Defendant also testified that consultations with Jackson County counsel confirmed that Defendant's treatment of hunting preserves is consistent with that other county.

Plaintiffs explained that their property had not been planted the previous year because of a fire, but that they had continued irrigation and weed control for future planting. In addition, Plaintiffs noted that they had placed cattle on their property a day or so before the trial and that they plan to plant alfalfa this year. Defendant agreed to review Plaintiffs' property upon a change in use and, if consistent with farm use under ORS 308A.056, reinstate it to special assessment for the next tax year.

## ISSUE PRESENTED

Does a hunting preserve qualify for farm use special assessment?

## ANALYSIS

■     As part of the policy recognizing "that agriculture and related land uses contribute significantly to Oregon's character and economy[,]" the legislature has provided "[a] means for agriculture to continue and prosper * * * in the interest of all citizens of this state" by allowing qualified farm properties to be taxed based on their values for farm use rather than market values. ORS 308A.050.[1] Qualified farm properties include those that are "within an exclusive farm use zone and that [are] used exclusively for farm use." ORS 308A.062(1). Plaintiffs' property is zoned exclusive farm use (EFU).

Plaintiffs argue that their hunting preserve qualifies under the definition of "farm use" in ORS 308A.056,[2] which provides, in relevant part:

---

[1] All references to the Oregon Revised Statutes (ORS) are to 1999.

[2] Plaintiffs referred to ORS 215.203, a land use statute containing substantially the same definition. Until 1999, the tax statutes did not contain a definition of "farm use."

"(1) As used in ORS 308A.050 to 308A.128, 'farm use' means the current employment of land for the primary purpose of obtaining a profit in money by:

"* * * * *

"(b) Feeding, breeding, managing or selling livestock, poultry, fur-bearing animals or honeybees or the produce thereof;

"* * * * *

"(e) Propagating, cultivating, maintaining or harvesting aquatic species and bird and animal species to the extent allowed by the rules adopted by the State Fish and Wildlife Commission;

"* * * * *

"(h) Using land described in this section for any other agricultural or horticultural use or animal husbandry or any combination thereof."

It is under that statute, subparagraph (e), that Defendant allows continuation of special assessment for that portion of property used for raising the birds and, subparagraph (b), for the raising of pigs. Defendant has disqualified the hunting preserve portion based on its finding that the "land is no longer being used as farmland" pursuant to ORS 308A.113(1)(a).

Plaintiffs argue that the definition of "farm use" clearly includes their hunting preserve. Plaintiffs' bird-raising activities are regulated by the State Fish and Wildlife Commission, from which Plaintiffs obtain a private shooting preserve license. *See* ORS 497.248; *see also* OAR 635-047-0005 to 635-047-0050. Pursuant to that regulation, Plaintiffs interpret the hunting preserve to qualify under subparagraph (e) as "harvesting * * * to the extent allowed by the rules adopted by the State Fish and Wildlife Commission."

In addition, Plaintiffs argue that the broad language of subparagraph (h) encapsulates hunting preserves, or, in the alternative, that they were allowing the land to lie "fallow for one year as a normal and regular requirement of good agricultural husbandry[.]" ORS 308A.056(3)(b) (providing

alternative allowances for qualifying land as "currently employed for farm use").

■ ■   While at first glance subsection (1)(e) of ORS 308A.056 might appear to lend itself to Plaintiffs' reading, the court must be guided by the principle of legislative intent when reading any statute. *See PGE v. Bureau of Labor and Industries,* 317 Or 606, 610, 859 P2d 1143 (1993). Doing so requires an examination of the text and context of ORS 308A.056. *See id.* Until recently, the definition of "farm use" was found in only the land use statutes at ORS 215.203. That definition remains substantially the same as it appears in ORS 308A.056, as does the case law construing it.

■      To discern legislative intent, the court has previously considered the relationship between the definition of "farm use" in ORS 215.203 with the permitted and conditional non-farm uses within an EFU zone in ORS 215.213 and ORS 215.283. *See King Estate Winery, Inc. v. Dept. of Rev.,* 14 OTR 169, 172 (1997). The court found that:

> "* * * if a specific land use such as breeding of grey-hounds or wineries [or hunting preserves] is listed in ORS 215.213 or ORS 215.283 as a nonfarm use, it is indicative of the legislature's intent that such use is not considered farm use under the general description in ORS 215.203 [ORS 308A.056]."

*Id.* at 173 (citation omitted). Hunting preserves are listed in ORS 215.213(2)(e) as a permitted nonfarm use. In *King Estate Winery,* the court stated that the "specific listing acts to remove it from qualifying as farm use." *Id.*

■      Certain suspensions of farming are recognized by the law, including allowing the land to lie fallow for one year as a "normal and regular requirement of good agricultural husbandry." ORS 308A.056(3)(b). That situation does not apply here. Plaintiffs testified that crops would have been planted, but that a fire in the previous year prevented that. Such an occurrence is not listed among the exceptions. Letting land lie fallow is a "decision to be made before, not after the fact." *Jenkins v. Dept. of Rev.,* OTC-RD No. 3544, WL 468070 (Aug 24, 1994). It is not an excuse. *See id.* Plaintiffs' ground preparation activities "are not sufficient under the applicable law

to constitute farming." *See Lippert v. Jackson County Assessor*, OTC-MD No. 991240C (Feb 7, 2000).

Plaintiffs may reapply for farm use special assessment upon a return of the land to actual farming activities.

## CONCLUSION

IT IS THE DECISION OF THIS COURT that Defendant's disqualification of the hunting preserve portion of Plaintiffs' land was proper. The appeal is denied.